IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

PATRICIA WHITCOMB                                    PLAINTIFF

VERSUS                                         NO.   3:24-cv-33-CWR-FKB

KEMPER COUNTY, MISSISSIPPI                      DEFENDANT

(JURY TRIAL DEMANDED)

## COMPLAINT

This is a civil action to recover back pay and benefits, compensatory damages, front pay, and attorney's fees for sex discrimination and sexual harassment as made actionable pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e to §2000e-17.

### PARTIES

1. The Plaintiff, Patricia Whitcomb, a woman, is an adult resident citizen of Louisville, Mississippi. Louisville, Mississippi is located in Winston County, Mississippi.

2. The Defendant, Kemper County, is a political subdivision organized under the laws of the State of Mississippi. Kemper County may be served with process by service of a Summons and Complaint upon its Chancery Clerk at 280 Veterans Street, DeKalb, Mississippi 39328.

3. Kemper County is an "employer" as defined by Title VII of the Civil Rights Act of 1964.

4. Ms. Whitcomb is a former "employee" of Kemper County as defined by Title VII.

### JURISDICTION & VENUE

5. This Court has subject matter jurisdiction of this civil action pursuant to 28 U.S.C. § 1331 (Federal Question) and 42 U.S.C. § 2000e-5(f)(3) (Title VII).

6. Venue is proper in the Southern District of Mississippi, pursuant to 28 U.S.C. § 1391,

since a substantial part of the events and omissions giving rise to the claim occurred in this judicial district.

## CAUSE OF ACTION

7. Patricia Whitcomb began her employment with the Defendant, Kemper County, as warden of the Kemper County Regional Correctional Facility on July 5, 2020. Ms. Whitcomb is female.

8. Upon being hired by Kemper County Sheriff, James Moore (hereinafter "Sheriff Moore"), Ms. Whitcomb did not receive any initial counseling detailing her job expectations or requirements as warden.

9. Further, Ms. Whitcomb was not informed as to her right to be free from any form of discrimination, nor was she informed of what to do in the case that she did face discrimination in any form, including actions to take or persons to report said discrimination to.

10. Upon information and belief, the Defendant lacked an adequate and effective workplace sexual harassment prevention policy, which is key to preventing sexual harassment as well as other forms of discrimination and harassment in the workplace.

11. Once hired, Ms. Whitcomb was sexually harassed and was subjected to different terms and conditions of employment than her male colleagues.

12. Ms. Whitcomb performed her job duties as warden admirably, never receiving a single counseling, "write-up," or disciplinary punishment for any failure related to her duties as warden.

13. Ms. Whitcomb would frequently request feedback from Sheriff Moore on her job performance, to which Sheriff Moore would state he had no issues with the way she was doing her job.

14. Almost immediately after her employment with the Defendant began, Ms. Whitcomb began receiving phone calls from the President of the Board of Supervisors of Kemper County, Mr. James "Pat" Granger, Jr. (hereinafter "Granger"), whom Ms. Whitcomb knew previously while working for the Defendant once before and who was known to be a personal friend of Sheriff Moore.

15. From July 2020 to December 2020, Granger called and/or texted Ms. Whitcomb almost every other day, often near the end of the workday before she was to leave for the day.

16. Granger first inquired whether Ms. Whitcomb was still dating her boyfriend, to which Ms. Whitcomb informed Granger she was and that her boyfriend was temporarily residing with her.

17. Following that inquiry, Granger followed up by asking why Ms. Whitcomb used the word temporarily, to which she explained her boyfriend was staying until he finished his remodeling project.

18. Granger then inquired as to whether Ms. Whitcomb could find time to get away from her boyfriend so Granger could see her.

19. Ms. Whitcomb perceived this as an unwelcome sexual advance, to which she felt anxiety and uneasiness, as she understood the conversation had become unprofessional.

20. Because she had just began her employment as a county employee, and due to his position as Board of Supervisor President, Ms. Whitcomb did not report Granger's harassment, and she began to try to avoid conversations with Granger by reiterating that she was in a relationship.

21. However, Granger was not deterred, and he increasingly called and texted Ms. Whitcomb more.

22. Eventually, Granger began to ask Ms. Whitcomb if she would meet him after work, to which she would decline flatly or with an excuse hoping he would leave her alone.

23. Almost every single conversation Granger held with Ms. Whitcomb would become sexual in nature, often ending with Granger requesting that she sleep with him.

24. Most, if not all of Granger's harassment would occur during the workday.

25. Furthermore, Granger would often come to the correctional facility to have his truck washed by inmates, to which he would frequently request one of Ms. Whitcomb's subordinates to inform her that he wanted to speak with her.

26. This conduct continued until October of 2020, when Ms. Whitcomb, in a text exchange, explicitly told Granger no to his sexual advances. However, Granger continued with his harassment.

27. On November 11, 2020, Granger send a text to Ms. Whitcomb which stated, "Can I get what I what". Ms. Whitcomb perceived Granger to be asking for sex, to which she replied, "No", "Really?", to which Granger replied, "Yes really".

28. On November 16, 2020, Granger inquired about Ms. Whitcomb's lunch plans, to which he said, "Oh ok I thought I might get a chance to see you".

29. On December 4, 2020, as part of a series of texts, Granger asked, "You can tell how much I want you right" to which Ms. Whitcomb responded will an eye-roll emoji. Granger then stated, "What that means u don't believe me", to which Ms. Whitcomb responded with "no".

30. As part of that same conversation on December 4, 2020, Granger said, "Look (peering eye emoji) how hard I been trying to see haven't gave up and been patient I want really bad", to which Ms. Whitcomb replied, "ok".

31. Around this same time, Ms. Whitcomb began to have trouble with her chief of

security, Terry Rudolf (hereinafter "Rudolf"), who was also Sheriff's Moore's brother. Ms. Whitcomb felt Rudolf was undermining her authority as warden and that he was interfering with her ability to do her job.

32. On or about December 7th, 2020, Ms. Whitcomb, unsure of who to ask for help to address the problem with Rudolf, asked Granger as Board of Supervisor President and as a friend of Sheriff Moore to speak to Sheriff Moore on her behalf regarding Rudolf's conduct.

33. Granger responded by asking Ms. Whitcomb what she would do for him if he spoke to Sheriff Moore. Ms. Whitcomb perceived that Granger was asking what sexual favor she would perform if he spoke to Sheriff Moore for her.

34. Then, on December 9th, 2020, Granger text Ms. Whitcomb, "U need to tell me I be looking out for you". Ms. Whitcomb's perceived Granger to be saying that since he was looking out for her that she needed to tell him what she would do for him.

35. Over the next two days via text, Granger asked at least three more times whether Ms. Whitcomb had come up with anything to do for him.

36. Ms. Whitcomb, disgusted by Granger's offer of sex in exchange for addressing an employee problem for her with Sheriff Moore, did not respond to his repeated requests for an answer.

37. Then, on December 18th, 2020, Ms. Whitcomb arrived to work, where she was informed by Sherriff Moore that she needed to gather her things and exit quietly.

38. Ms. Whitcomb requested a reason for why she was being fired, to which Sheriff Moore refused to give her an answer, only telling her to gather her things and leave.

39. Frustrated by the fact she felt she was eventually fired because she refused Granger's sexual advances, Ms. Whitcomb filed a Charge of Discrimination with the Equal Employment

Opportunity Commission ("EEOC") on April 8th, 2021, alleging sex discrimination on the part of the Defendant.

40. On October 23, 2023, Ms. Whitcomb received her right to sue letter from the EEOC, to which she files this lawsuit within the 90-day period required to file a civil suit following receipt of a right to sue letter.

41. Upon information and belief, Ms. Whitcomb was terminated on the recommendation and encouragement of Granger to his friend, Sherriff Moore, when she refused Granger's sexual advances.

42. Upon information and belief, but for Ms. Whitcomb resisting Granger's sexual harassment, she would not have been fired.

43. After she was fired, Ms. Whitcomb never received a text message or call from Granger again.

44. The conduct described above by Granger constituted sexual harassment and created a hostile work environment sufficient to alter the terms and conditions of Ms. Whitcomb's employment.

45. Granger's harassment was unwelcome by Ms. Whitcomb and extremely offensive to her to the extent that it unreasonably interfered with her work performance.

46. Granger's harassment was severe and pervasive to alter the conditions of Ms. Whitcomb's employment and created an abusive working environment.

47. Granger sexually harassed Ms. Whitcomb on the basis of sex, and upon information and belief, he did not harass any male employees of the Defendant in the same manner.

48. Upon information and belief, Ms. Whitcomb lacked a reasonable method of reporting Granger because the Defendant failed to have an adequate workplace sexual harassment policy

in place and/or failed to inform Ms. Whitcomb of any existing policies.

49. Upon information and belief, Granger had sexually harassed other female employees of the Defendant prior to his harassment of Ms. Whitcomb.

50. The Defendant is liable for the conduct of Granger because the Defendant was negligent in its failure to have an adequate workplace sexual harassment policy in place to protect Ms. Whitcomb against Granger's actions.

51. Because of a lack of an adequate workplace prevention policy, the Defendant knew or should have known that Granger was sexually harassing Ms. Whitcomb and is therefore liable for his conduct.

52. Further, the Defendant is vicariously liable for the conduct of Granger because as President of the Board of Supervisors, Granger is a proxy of the Defendant.

53. The actions of Defendant towards Ms. Whitcomb were intentional and taken in willful disregard of Ms. Whitcomb's federally protected rights.

Claim 1- Title VII Sex Discrimination based on Sexual Harassment

54. The Defendant discriminated against Ms. Whitcomb on the basis of her sex by subjecting her to different terms and conditions of her employment when she was sexually harassed by Granger, which created an objectively hostile work environment.

55. Granger's harassment was offensive and unwelcome by Whitcomb. Further, a reasonable person in Ms. Whitcomb's position would have found the conduct offensive.

56. Ms. Whitcomb's sex was a motivating factor in her differential treatment by the Defendant of Ms. Whitcomb with respect to her terms and conditions of employment.

Claim 2- Title VII Retaliation

57. The Defendant discriminated against Ms. Whitcomb on the basis of her sex by retaliating against her for refusing the sexual advances and offers of Granger.

58. Ms. Whitcomb's refusals of Granger's sexual advances were a but for cause of the retaliation taken against her for refusing Granger's sexual advances and offers.

## AD DAMNUM

59. Ms. Whitcomb prays for the following relief:

   a. Back pay and benefits;

   b. Compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses;

   c. Front pay; and

   e. Reasonable costs and attorney's fees.

Respectfully submitted, this the 19th day of January, 2024.

/s/ Regan C. Monk

REGAN C. MONK
MS BAR #106573

/s/ David E. Bane Jr.

DAVID E. BANE JR.
MS BAR #8563

Attorneys for Patricia Whitcomb
BaneMonk, PLLC
119 South Court Avenue
Louisville, MS 39339
Telephone: 662-773-5775
Facsimile: 662-779-0984
Emails: regan@banemonklaw.com
        david@banemonklaw.com